UNITED STATES DISTRICT COURT
NORTHERN DISTRICT OF OHIO
EASTERN DIVISION

| | | |
|---|---|---|
| EMMETT JORDAN, | ) | Case No. 1:02 CV 1280 |
| | ) | |
| Plaintiff, | ) | |
| | ) | |
| vs. | ) | O R D E R |
| | ) | (Resolving Docket No. 203) |
| CITY OF CLEVELAND, | ) | |
| | ) | |
| Defendant. | ) | Magistrate Judge James S. Gallas |
| | ) | |

Defendant City of Cleveland has moved for additional time to depose plaintiff prior to the economic damages phase of trial.  Pursuant to the order of remand and mandate from the Sixth Circuit in - F.3d - , 2006 WL 2067980 (6th Cir. 2006), for a trial on the issue of economic damages, this court issued a scheduling order after meeting with the parties.  This case was set for jury trial on November 2, 2006 and among other things leave was granted to defendant to depose plaintiff on or before September 1, 1996 (ECF #197-98).  Plaintiff was not deposed within the permissive period and defendant moved for extension of time.  This matter was heard on September 29, 2006, and at the hearing the issue arose concerning the mitigation of damages.  The court sees three issues from the parties' positions: the first being mitigation; the second being plaintiff's moonlighting activities; and finally there is the issue of plaintiff's disability pension.

*Mitigation*:

Defendant now complains that plaintiff has not responded adequately to interrogatories and requests for production of documents seeking to discover plaintiff's medical capacity to engage in work other than firefighting, and  information concerning his secondary employment both before

1:02 CV 1280                                             2

and after the ruling that plaintiff was found disabled and provided a disability pension for medical reasons. Defendant argues further that the pension plan does not require plaintiff to refrain from employment.

Defendant's exhibit, specifically 1993 Ohio Op. Atty. Gen. 2-2335, 93-072, states that Ohio Revised Code §742.22 requires termination of disability payments on the first day following reinstatement of the recipient to active duty as a member of the police or fire department, but further that the disability payments do not terminate upon being employed in another position. Defendant believes it is entitled to additional discovery on other jobs plaintiff has or could have obtained. Defendant's arguments are not legally supportable.

42 U.S.C. §2000e-5(g)(1) provides in part, "[i]nterim earnings or amounts earnable with reasonable diligence by the persons . . . discriminated against should operate to reduce the back pay otherwise allowable." In interpreting this provision in *Ford Motor Co. v. EEOC*, 458 U.S. 219, 102 S.Ct. 3057, 73 L.Ed.2d 721 (1982), the Supreme Court ruled that an employer charged with discrimination can toll the continuing accrual of back pay liability by unconditionally offering plaintiff the job, and the underployed or unemployed plaintiff cannot reasonably refuse. Plaintiff further may mitigate, according to the Supreme Court decision, by finding other employment because there is a requirement that "claimant must minimize damages and . . . that a claimant is no longer incurring additional injury if he has been able to find other suitable work, that all things consistent, is at least as attractive as the defendant's." *Id.*, 458 U.S. at 236. "Suitable employment" was explained to exclude other lines of work, demotion or demeaning employment. *Id.* at 231-32.

1:02 CV 1280                                                  3

The rejected job offer, according to *Ford*, must be "substantially equivalent" to toll the back pay award. *Id.* Mitigation of damages did not require the plaintiff to engage in lesser or dissimilar work, but a plaintiff that did so would have voluntarily minimized the back pay damages. *Id.*, 458 U.S. at 251 n. 14. Further, as explained in note 16, plaintiff need only seek employment "consonant with his particular skills, background and experience," under conditions no more onerous than the prior position. *Id*, 458 U.S. at 231 n. 16.

Elaborating on this point in *Rasimas v. Michigan Dept. of Mental Health*, 714 F.2d 614 (6th Cir. 1983), *cert. denied* 466 U.S. 950 (1984), the Sixth Circuit held that the issue whether a Title VII plaintiff has exercised reasonable diligence in seeking other "suitable employment" following a discriminatory discharge, requires first that the plaintiff present evidence of damages. Then the burden shifts to the defendant to establish the amount for "interim earnings" or lack of diligence in finding suitable employment. *Id.*, 714 F.2d at 63. Suitable employment was unambiguously defined in *Rasimas* as "substantially equivalent position." Such a job must involve virtually identical promotional opportunities, compensation, job responsibilities, working conditions and status. *Id.* It is defendant's burden to show that such a job was available.

Defendant further has the burden to demonstrate that plaintiff failed to use reasonable care and diligence in seeking this substantially equivalent employment. *Id.* Further, plaintiff "is not held to the highest standards of diligence, or [must] seek work that is unreasonably far from plaintiff's home. " *Id.* at 624-25. In other words, plaintiff "is not required to go to heroic lengths in attempting to mitigate his damages, but only to take reasonable steps to do so." *Ford v. Nicks*, 866 F.2d 865,

1:02 CV 1280                                              4

873 (6th Cir. 1989). An example of reasonable mitigation appears in *U.S. v. City of Warren, Mich.*, 138 F.3d 1083 (6th Cir. 1988), where after refusal to hire under the city's discriminatory hiring policy, a black police officer found work with the Detroit Police Department. *Id.* at 1098. Thus, defendant cannot stand on the principle that plaintiff can perform other work, because this would ignore defendant's burden to show that the work was "substantially equivalent." This leads to the issue of plaintiff's other employment. Defendant apparently construes this as voluntary mitigation by plaintiff engaging in jobs that were not "substantially equivalent."

*Secondary Employment or Moonlighting*:

Aside from whether or not there were "substantially equivalent" firefighter jobs available near plaintiff's residence, there is the issue of voluntary minimization as addressed in *Ford v. EEOC*. Defendant obviously believes that income received from other employment and from proprietorship activities are relevant to offset the back pay or front pay. While employed with defendant, plaintiff worked at least two jobs. As Judge Adams related in defendant's motion for summary judgment:

> Plaintiff missed several months of work in 2001 due to stress. He was referred to the Employee Assistance Program ("EAP"), but he had already independently sought out their assistance. The EAP referred him to Alcoholics Anonymous and provided psychological therapy for his stress. Plaintiff admits that at that time, he had been recently divorced and remarried, was filing for bankruptcy, *and was being forced out of a managing officer position at a private secondary employment service*. When Plaintiff returned from medical leave, he was placed on light duty. Once able to access the sick time bank and get donations from other firefighters, Plaintiff returned to medical leave. He terminated his employment with the City in February of 2002 when he retired on disability. He claims that the disability is based in substantial part upon stress resulting from harassment and retaliation by members of the Division and failure of management to do anything about it.(emphasis supplied)
> (Opinion, pg. 5-6, ECF #85).

1:02 CV 1280                                5

Plaintiff, as typical in firefighter positions, put in a substantial number of hours for defendant on only a few days per week and was allowed to work other jobs, a practice commonly known as moonlighting. This is not to be equated to abandoning his job as a firefighter to engage in a new field. Compare *Ford v. Nicks*, 866 F.2d at 873-74 (professor took real estate course and obtained license). For purposes of 42 U.S.C. §2000e-5(g), "'[i]nterim earnings' include the earnings from jobs that could not have been worked had no discrimination occurred. Or an employee accepts a job that he could not have taken if he remained in his old employment, the earnings from that job are interim earnings." *Chesser v. State of Illinois*, 895 F.2d 330, 338 (7th Cir. 1990). Thus in the case of *Chesser*, a state patrolman's moonlighting as a private investigator and for the county sheriff's department would have been disallowed at his old state patrol job, and only became legally available following discharge. These jobs constituted deductible interim earnings. *Id.* at 338; accord *Thorton v. East Texas Motor Freight*, 497 F.2d 416, 422 (6th Cir. 1974). In contrast, in *U.S. v. Jackson*, 1991 WL 322612 (E.D. Va.) and *Lilly v. City of Beckley*, 797 F.2d 191, 196 (4th Cir. 1986), back pay was not reduced by moonlighting jobs which the employee continued to engage in after the discriminatory action. Accordingly, since plaintiff engaged in secondary employment while also working for defendant, his past and future earnings from this employment or other economic activities do not constitute "interim earnings" but are permanent earnings and cannot be used to offset any back pay or front pay award. See 135 ALR Fed. 1, §5(a) and §5(b). There is no indication that plaintiff engaged in prohibited employment of moonlighting as a firefighter for another department after he left defendant's employment. Therefore, deposing plaintiff on this issue would not lead to admissible evidence.

1:02 CV 1280                                          6

*Disability Pension:*

Defendant made mention of the disability pension plaintiff has been receiving by pointing out a lack of consideration of such factors as plaintiff's bankruptcy. These arguments cannot be raised in this proceeding. For the purposes of this matter, it is established that plaintiff was awarded medical disability pension and the reason for the award is irrelevant in assessing economic damages. The real issue is whether the disability pension has the potential of reducing any front or back pay award that may be made to plaintiff.

Treatment of pension awards has been less than uniform throughout the circuits. A general review of the law shows that the pension offset issue has arisen far more frequently in Age Discrimination in Employment Act (ADEA) matters than in Title VII matters. Nonetheless, "[o]nce a court has decided to award back pay . . . plaintiffs sued under Title VII and the ADEA are standing on the same footing." *Maxfield v. Sinclair International*, 766 F.2d 788, 794 n. 5 (3rd Cir. 1985). Accordingly, this court foresees no difficulty in using principles developed in ADEA cases in Title VII application. In an early ADEA case involving a firefighter, the court found no abuse of discretion in deducting from plaintiff's damage award all amounts received by plaintiff from unemployment compensation benefits and from retirement pension benefits. See *Orzel v. City of Wauwatosa Fire Dept.*, 697 F.3d 743, 756 (7th Cir. 1983). In applying the collateral source rule, the court reasoned that it saw no reason to provide plaintiff with double recovery for lost employment. *Id.* This rationale was applied to a federal employee in *Smith v. Office of Personnel Management*, 778 F.2d 258 (5th Cir. 1985), where the district court offset the federal employee's recovery under the ADEA by disability compensation he was receiving.

1:02 CV 1280                                                                                   7

In subsequent decisions, the courts permitted recovery from collateral sources without offset. In the Eighth Circuit, different panels took opposite views on this issue. In *Doyne v. Union Electric Co.*, 953 F.2d 447 (8th Cir. 1992), the panel held that it was error for the district court to deduct pension payments from plaintiff's ADEA back and front pay awards because the payments were from a collateral source. However, another panel in *Glover v. McDonnell Douglas Corp.*, 981 F.2d 388 (8th Cir. 1992), vacated on other grounds, 510 U.S. 801 (1993), held that without reference to *Doyne* that the collateral source rule should be rejected.

The Sixth Circuit in *Jackson v. City of Cookeville*, 31 F.3d 1354, 1360 (6th Cir. 1994), cited *Doyne* with approval reasoning that "the victim rather than the perpetrator of discrimination should profit, [so] courts that have considered this question have held that pension payments from a collateral source are not to be deducted from an Age Discrimination in Employment Act award." Nonetheless, the court in *Jackson* did not apply *Doyne*'s rationale, finding instead, that since Jackson himself asked for damage award that included a deduction for pension benefits from his back pay, the district court did not abuse its discretion in subtracting these benefits from the front pay award as well. *Id.* On the other hand, some observers have seen inconsistency within the Sixth Circuit with regard to the offset of pension benefits permitted in *Hawley v. Dresser Indus., Inc.*, 958 F.2d 720 (6th Cir. 1992). *Hawley* was subsequently distinguished, though, in *Hamlin v. Charter Tp. of Flint*, 165 F.3d 426, 433-36 (6th Cir. 1999). The court noted in *Hamlin* that the purpose of the pension payment was effectively for severance. *Id.* and see *Hawley*, 958 F.2d at 726. Thus as analyzed in *Hamlin*, the decision "did not permit the plaintiff to benefit fully from company-funded severance alternatives and also keep a jury verdict based on the severance." *Hamlin*, 165 F.3d at

1:02 CV 1280                                              8

434. Accordingly, there is no strife between *Hawley* and such other cases as *Rasimas* which allowed no offset for unemployment benefits, when these benefits had a source collateral to that of the employer. *Rasimas*, 714 F.2d at 627. compare *Lussier v. Runyon*, 50 F.3d 1103, 1109 (1st Cir. 1995) (finding internal division within the Sixth Circuit). Severance payments and unemployment funds both arise from termination of employment, but in general severance payments are more analogous to employer paid compensation and the offset under those circumstances was reasonably grounded. Thus *Hamlin* illustrates a reasonable progression to consider the source of payment for the benefit. In *Hamlin* the court borrowed from the Fifth Circuit decision applying the Jones Act, *Phillips v. Western Company of North America*, 953 F.2d 923, 932 (5th Cir. 1992). This approach includes consideration of several factors in the determination whether pension benefits are "collateral." The reference to "collateral" appears to be shorthand for being employee-funded because the first factor under the *Phillips*-approach is "whether the employee makes any contribution to funding the disability payment." The remaining factors are: (2) "whether the benefit plan arises as a result of a collective bargaining agreement; (3) whether the plan and payments thereunder cover both work-related and non work-related injuries; (4) whether payments from the plan are contingent upon length of service of the employee; and (5) whether the plan contains any specific language contemplating a set-off of benefits received under the plan against a judgment received in a tort action. *Id.* In *Hamlin* the court found that the employee had made contributions to fund his pension and the contributions by the employer were not made to discharge any liability or obligation but to carry out the policy of social betterment. And see *Rasimas*, 714 F.2d at 628 n. 13 (holding that unemployment benefits are collateral and should not be deducted from back pay awards). Other

1:02 CV 1280                                                                  9

factors were also present indicating that the disability payments were a collateral source benefit which should not be offset.

Although the court has not been made aware of whether these factors are present in plaintiff's pension plan, there is certainly no need to depose plaintiff on these matters since they are equally within defendant's knowledge and evidentiary materials. Accordingly, the motion for leave for additional time to depose plaintiff is denied.

    IT IS SO ORDERED.

                                                  s/James S. Gallas  
                                           United States Magistrate Judge

Dated: October 20, 2006